UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LENWORTH BUNTING,<br>    Plaintiff, | : | CIVIL ACTION NO.<br>3:17-CV-01445 (JCH) |
| v. | : | |
| KELLOGG'S CORPORATION<br>    Defendant. | : | JANUARY 16, 2019 |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (DOC. NO. 50)**

**I.    INTRODUCTION**

The plaintiff, Lenworth Bunting ("Bunting"), brings claims of harassment, discrimination, and retaliation against the defendant, Kellogg's Corporation ("Kellogg"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., ("Title VII"). See Complaint ("Compl.") (Doc. No. 1) at 1–3. Kellogg now moves for summary judgment. See Defendant's Motion for Summary Judgment ("Mot.") (Doc. No. 50). Bunting, who is acting pro se, submitted several briefs opposing summary judgment as to his Title VII claims. See generally Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") (Doc. No. 57); Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Sur-Reply") (Doc. No. 61). In these opposition papers, Bunting also appears to assert for the first time a state law claim against Kellogg. See Pl.'s Opp'n at 6–7.

For the reasons set forth below, Kellogg's Motion for Summary Judgment is granted. While the court will not address Bunting's new state law claim because it is not properly before the court, Bunting may pursue such a claim by filing a motion to amend his Complaint. Only after Bunting has filed such a motion will the court decide whether to permit Bunting to amend his Complaint at this stage of the litigation.

1

## II.   BACKGROUND

Kellogg employed Bunting at its Distribution Center in Newington, Connecticut. Defendant's Local Rule 56(a)1 Statement of Facts ("Def.'s L.R. 56(a)1") (Doc. No. 52) at ¶ 1; Plaintiff's Local Rule 56(a)2 Statement of Facts ("Pl.'s L.R. 56(a)2") (Doc. No. 58) at 1, ¶ 1.  On October 14, 2015, a physical altercation occurred between Bunting and a co-worker, Marcos Cadavid ("Cadavid"), at the Distribution Center.  See Def.'s L.R. 56(a)1 ¶¶ 13–22; Pl.'s L.R. 56(a)2 at 21, ¶¶ 1–5.  Bunting claims that Cadavid sexually assaulted him by grabbing his chest and bottom.  Def.'s L.R. 56(a)1 at ¶ 22; Pl.'s L.R. 56(a)2 at 9, ¶ 22, 21, ¶ 1.  Cadavid told Kellogg managers that he accidentally bumped into Bunting, and that Bunting responded by punching and chocking him.  Def.'s L.R. 56(a)1 at ¶ 27; Pl.'s L.R. 56(a)2 at 21, ¶ 5.

On October 19, 2015, Kellogg sent Bunting a letter advising him that his employment was terminated.  Def.'s L.R. 56(a)1 at ¶ 43; Pl.'s L.R. 56(a)2 at 15, ¶ 43; Defendant's Exhibit A ("Def.'s Ex. A") (Doc. No. 52-1) at 107 (Bunting's employment termination letter).[1]  On February 25, 2016, Bunting filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") that identified age discrimination, sexual harassment, and retaliation as the basis for his charge of employment discrimination ("the CHRO Charge").  Def.'s L.R. 56(a)1 at ¶ 45; Pl.'s L.R. 56(a)2 at 16, ¶ 45; Def.'s Ex. A at 135–138 (Bunting's CHRO Charge).  The Equal Employment Opportunity Commission ("EEOC") notified Bunting that it had received a

---

[1] Defendant's Exhibit A (Doc. No. 52-1) contains within it many different exhibits, including, inter alia, Bunting's Deposition Transcript, Kellogg's letter terminating Bunting's employment, and the CHRO's decisions regarding Bunting's discrimination allegations.  For clarity, this Ruling will rely on the page numbers provided by the court's electronic filing system when citing to evidence in Defendant's Exhibit A.

copy of his CHRO Charge alleging age discrimination, sex discrimination, and retaliation. Def.'s L.R. 56(a)1 at ¶ 47; Pl.'s L.R. 56(a)2 at 16, ¶ 47; Def.'s Ex. A at 139 (EEOC letter to Bunting, dated March 31, 2016). The EEOC also informed Bunting that it would accept and adopt the CHRO's final findings as its own unless Bunting requested in writing that the EEOC conduct its own review of Bunting's Charge within fifteen days of the date on which Bunting received the CHRO's notice of its final findings. Def.'s L.R. 56(a)1 at ¶ 48; Pl.'s L.R. 56(a)2 at 17, ¶ 48; Def.'s Ex. A at 140 (EEOC's Notice of Right to Request Review).

On March 20, 2017, the CHRO dismissed Bunting's case, finding that there was no reasonable cause for believing that Kellogg terminated Bunting's employment on the basis of age discrimination, sexual harassment, or retaliation. Def.'s L.R. 56(a)1 at ¶ 49; Pl.'s L.R. 56(a)2 at 17, ¶ 49; Def.'s Ex. A at 141–148 (letter notifying Bunting of the CHRO's final decision). The CHRO also advised Bunting that he could apply for reconsideration of the decision. Def.'s Ex. A at 141. Bunting filed a timely request for reconsideration, which the CHRO denied on August 25, 2017. Plaintiff's Exhibits ("Pl.'s Exs.") (Doc. No. 57-1) at 7–11 (CHRO's decision on Bunting's reconsideration request).

The EEOC mailed Bunting a Dismissal and Notice of Rights Letter ("the Right to Sue Letter") that was dated May 15, 2017. Def.'s L.R. 56(a)1 at ¶ 52; Pl.'s L.R. 56(a)2 at 18, ¶ 52; Compl. at 9 (EEOC's Letter of Dismissal and Notice of Rights to Bunting). This Right to Sue Letter, which Bunting attached to the Complaint that he filed in this court, notified Bunting that the EEOC had adopted the CHRO's findings; that the EEOC was dismissing Bunting's claims of age discrimination, sexual harassment, and retaliation; and that Bunting had a right to bring a Title VII suit in federal court. Def.'s

3

L.R. 56(a)1 at ¶ 52; Pl.'s L.R. 56(a)2 at 18, ¶ 52; Compl. at 9 (EEOC's Letter of Dismissal and Notice of Rights to Bunting). The Right to Sue Letter further noted:

> This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

Compl. at 9 (emphasis in original).

On August 29, 2017, Bunting filed the instant action in this court. See generally Compl. While his CHRO Charge alleged age discrimination, sexual harassment, and retaliation, the Complaint that he filed in federal court alleges race discrimination, sexual harassment, and retaliation. See also Def.'s L.R. 56(a)1 at ¶¶ 45, 47, 54; Pl.'s L.R. 56(a)2 at ¶¶ 45, 47, 54.

## III.    STANDARD OF REVIEW

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71–72 (2d Cir. 2016). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present "such proof as would allow a reasonable juror to return a verdict in [its] favor," Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)). On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact. Cortes v. MTA N.Y. City Transit, 802 F.3d 226, 230 (2d Cir. 2015) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)).

## IV. DISCUSSION

Kellogg argues, inter alia, that summary judgment is warranted as to the Title VII claims that Bunting previously raised in his CHRO Charge (i.e., sexual harassment and retaliation) because they are time barred. See Def.'s Mem. at 7. Kellogg further argues that summary judgment is warranted as to Bunting's remaining Title VII claim (race discrimination) because Bunting failed to administratively exhaust that claim. See id. at 7–10.

The court will address each of these arguments in turn. It will then consider Bunting's state law claim against Kellogg, which Bunting asserts for the first time in his opposition briefs to Kellogg's Motion for Summary Judgment. See Pl.'s Opp'n at 6–7.

### A. Title VII Claims of Sexual Harassment and Retaliation

Kellogg argues that summary judgment is warranted as to Bunting's Title VII claims of sexual harassment and retaliation. See Def.'s Mem. at 7. More specifically,

5

Kellogg argues that these claims, which were dismissed by the CHRO and the EEOC, are time barred because Bunting did not file his federal lawsuit within 90 days of receiving the EEOC's Right to Sue Letter. See id.

It is well established that, "[i]n order to be timely, a claim under Title VII . . . must be filed within 90 days of the claimant's receipt of a right-to-sue letter." Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996); see also 42 U.S.C. § 2000e-5(f)(1) ("If a charge filed with the Commission . . . is dismissed by the Commission, . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge [ ] by the person claiming to be aggrieved"). Courts in this Circuit have adopted "a presumption that a notice provided by a government agency was mailed on the date shown on the notice." Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 37 (2d Cir. 2011). "There is a further presumption that a mailed document is received three days after its mailing." Id. These presumptions, however, are not dispositive where "a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail[.]" Sherlock, 84 F.3d at 526.

Federal courts have strictly enforced Title VII's 90-day limitations period, including against pro se litigants. See Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) (dismissing litigant's Title VII claims as time barred and advising that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular

6

litigants"); Johnson v. St. Barnabas Nursing Home, 368 F. App'x 246, 247, 248 (2d Cir. 2010) (dismissing pro se litigant's Title VII suit as untimely because it was filed six days after her 90-days limitations period expired). However, they have also recognized that Title VII's limitations period is subject to equitable tolling "in [the] rare and exceptional circumstances in which a party is prevented by some extraordinary way from exercising his rights[.]" Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks, citations, and alterations omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Id. (internal quotation marks omitted).

Litigants who seek equitable tolling bear the burden of establishing both of these prongs. Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002). With respect to the first prong, the operative inquiry is whether the plaintiff "acted as diligently as reasonably could have been expected under the circumstances" throughout the period he seeks to toll. Harper v. Ercole, 648 F.3d 132, 138–39 (2d Cir. 2011) (internal quotation marks and alterations omitted, emphasis in original); see also Morales v. Berryhill, No. 3:17-CV-0927 (MPS), 2018 WL 3748159, at *3 (D. Conn. Aug. 7, 2018). The second prong of the equitable tolling test is "met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." Menominee Indian Tribe of Wisconsin v. United States, 136 S. Ct. 750, 756 (2016) (emphasis in original); see also Frederick v. JetBlue Airways Corp., 671

7

F. App'x 831, 832 (2d Cir. 2016). "Equitable tolling is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period; where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant; or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." Zerilli-Edelglass, 333 F.3d at 80 (internal quotation marks and citations omitted). The Second Circuit has cautioned, however, that equitable tolling does not extend to "garden variety claim[s] of excusable neglect." South v. Saab Cars USA, Inc., 28 F.3d 9, 12 (2d Cir. 1994) (internal quotation marks omitted).

In this case, Bunting received a Right to Sue Letter that was dated May 15, 2017. See Def.'s L.R. 56(a)1 at ¶ 52; Pl.'s L.R. 56(a)2 at 17, ¶ 52; Compl. at 9; Def.'s Ex. A at 97: 22–25. Thus, there is a presumption that the EEOC mailed this Letter on May 15, and that Bunting received the Letter three days later, i.e., on May 18. Bunting, however, testified at his Deposition that he did not physically take possession of the Right to Sue Letter until May 30, 2018. See Def.'s Ex. A at 98: 3–4. Bunting explained that he was "seldom" at his residential address, instead spending many of his nights sleeping at his girlfriend's house, his sister's house, or in his car. Id. at 99:1–17. Bunting further testified that he and his wife, who were separated at the time, "never communicated about the mail," and that he did not know when the Right to Sue Letter was delivered to his residential mail box, which he only checked from "[t]ime to time." Id. at 53:3–13, 98:18–19, 100:3–25.

District courts in this Circuit have "grappled with the question of whether a right-to-sue letter is considered 'received' on the date on which it is actually obtained by the

8

recipient, or on the date on which it might have been obtained had the recipient exercised due diligence." Bennett v. Morgan Stanley & Co., No. 96 CIV. 6071 (AGS), 1997 WL 749364, at *2 (S.D.N.Y. Dec. 4, 1997). In Sousa, the Second Circuit calculated the limitations period in an employment discrimination suit using the date on which the pro se plaintiff actually received his right to sue notice (September 10), rather than the date on which the notice was delivered to the plaintiff's post office box (September 5). Sousa v. N.L.R.B., 817 F.2d 10, 10–11 (2d Cir. 1987). However, the Court also noted that an "unexplained failure to visit a post office box for a long period of time might result in a different conclusion." Id. at 11.

In this case, the court need not reach the question of whether Bunting's delay in retrieving the Right to Sue Letter from his mailbox was "long" and "unexplained." Id. Assuming that Title VII's limitations period started on May 30, the date on which Bunting claims he took physical possession of the Right to Sue Letter, Bunting was required to file his Title VII claims in federal court on or before August 28. Bunting, however, filed his Complaint on August 29. See Compl. at 6. As noted above, Title VII's 90-day limitations period is a strict one. See, supra, at 6–7. Indeed, "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1984) (internal quotation marks omitted); see also Toolan v. Bd. of Educ. of City of New York, No. 02 CIV. 6989 (DC), 2003 WL 22015437, at *2 (S.D.N.Y. Aug. 25, 2003) (dismissing pro se plaintiff's Title VII claims as time barred because they were filed "only one day late").

9

Thus, as Bunting has not timely filed his Title VII claims, the court may not consider those claims unless equitable tolling applies. Bunting, however, has not "met the extraordinary burden to invoke equitable tolling." Haygood v. ACM Med. Lab., Inc., 642 F. App'x 27, 28 (2d Cir. 2016) (internal quotation marks omitted). Bunting offers only one justification for not filing a timely lawsuit, namely: that he believed that his application for reconsideration of the CHRO's decision tolled Title VII's 90-day limitations period. See Pl.'s Opp'n at 21. He argues that the EEOC therefore erred by issuing the Right to Sue Letter before the CHRO had ruled on his request for reconsideration. See id.

However, Bunting is mistaken in his interpretation of the law. It is true that a state deferral agency, such as the CHRO, has exclusive jurisdiction of a discrimination charge for the first 60 days after the charge is filed. Mohasco Corp. v. Silver, 447 U.S. 807, 816 (1980) ("[T]he EEOC could not proceed until either state proceedings had ended or 60 days had passed[.]"); 42 U.S.C. § 2000e-5(c) ("[N]o charge may be filed [with the EEOC] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated[.]"). However, once the deferral agency's 60-day period of exclusive jurisdiction expires, the EEOC may proceed to process the discrimination charge. See 29 C.F.R. § 1601.13(a)(3)(ii) ("After the expiration of the exclusive processing period, the Commission may commence processing the allegation of discrimination."); see also Mohasco, 447 U.S. at 817 (noting that the EEOC may begin processing a plaintiff's complaint after the expiration of the deferral agency's period of exclusive jurisdiction). This court has not identified any statutory provisions,

caselaw, or regulations that would suggest that a pending motion for reconsideration before the deferral agency extends this period of exclusive jurisdiction beyond 60 days.[2] To the contrary, existing regulations expressly authorize the EEOC to commence processing a discrimination charge after the expiration of the deferral agency's exclusive jurisdiction period. See 29 C.F.R. §§ 1601.13(a)(3)(ii), 1601.13(b)(1).

In this case, Bunting filed his discrimination charge with the CHRO on February 25, 2016. Def.'s L.R. 56(a)1 at ¶ 45; Pl.'s L.R. 56(a)2 at 16, ¶ 45; Def.'s Ex. A at 135–138 (Bunting's CHRO Charge). The EEOC notified Bunting that his filing constituted a dual filing with both the EEOC and the CHRO.[3] Def.'s Ex. A at 140 ("This notice is to inform you that the charge to which you are a party, filed with both the Connecticut Commission on Human Rights and Opportunities (CCHRO) and the federal Equal Employment Opportunity (EEOC), will be processed by the CCHRO."). Then, on May 15, 2017, the EEOC dismissed Bunting's discrimination charge. Def.'s L.R. 56(a)1 at ¶ 52; Pl.'s L.R. 56(a)2 at 18, ¶ 52; Compl. at 9 (EEOC's Letter of Dismissal and Notice of Rights to Bunting). Because this dismissal occurred more than 60 days after Bunting initially filed his discrimination charge, the EEOC had jurisdiction to take such an action, notwithstanding Bunting's pending motion for reconsideration before the CHRO.

Nor does Bunting's misapprehension of the law justify the equitable tolling of his Title VII claims. District courts in this Circuit have regularly denied equitable tolling

---

[2] Indeed, the EEOC regularly dismisses discrimination charges before the deferral agency has concluded its initial state proceedings. See, e.g., Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1176 (2d Cir. 1996) (noting without comment that "[t]he EEOC issued a right-to-sue letter on September 2, 1992," and that the deferral agency later dismissed the plaintiff's charges on November 27, 1992).

[3] Bunting does not dispute that he filed his discrimination charge with both the EEOC and the CHRO.

11

where the plaintiffs justified their untimely filing of a lawsuit on pending actions before agencies or state courts. See, e.g., Wallace v. KX Indus., No. 3:98CV02523 (EBB), 1999 WL 1421659, at *1–2 (D. Conn. Dec. 9, 1999) (holding that the pendency of the plaintiff's state court appeal of the CHRO's decision did not toll her Title VII action in federal court); Gonzalez v. Fedex Co., No. 95 CIV. 3529 (AGS), 1996 WL 346968, at *3 (S.D.N.Y. June 24, 1996) (holding that the plaintiff's request to the EEOC for reconsideration of its decision did not toll the 90-day period for filing a federal lawsuit). Furthermore, the EEOC's Right to Sue Letter clearly warned Bunting that his Title VII "lawsuit **must be filed <u>WITHIN 90 DAYS</u> of [his] receipt of this notice**; or [his] right to sue based on this charge will be lost." Compl. at 9 (emphasis in original). Nothing in this Letter suggests that the start date for the 90-day limitations period depended on actions pending before the CHRO. Nor can Bunting avoid Title VII's time bar by arguing that he subjectively believed that the statutory limitations period began running when the CHRO ruled on his pending application for reconsideration. In an equitable tolling analysis, "the operative question is what a reasonable plaintiff would have done, not what [a] [p]laintiff subjectively felt justified in doing." Wang v. Palmisano, 157 F. Supp. 3d 306, 322–23 (S.D.N.Y. 2016). Bunting did not "act[ ] as diligently as reasonably could have been expected <u>under the circumstances</u>" when he ignored the Right to Sue Letter's clear instructions to file his federal lawsuit within 90 days of receiving that same Letter. Harper, 648 F.3d at 138–39 (internal quotation marks and alterations omitted, emphasis in original). Indeed, nothing in the record suggests that Bunting even attempted to reach out to the EEOC, CHRO, or others for confirmation that, notwithstanding the Right to Sue Letter's contrary instructions, he was correct in his

belief that the limitations period would be tolled until the CHRO decided his application for reconsideration.

Moreover, there is no evidence to suggest that the circumstances surrounding Bunting's failure to timely file his federal law suit are extraordinary in any way. Bunting was not prevented from filing his federal action by health problems, mental illness, or misrepresentations by Kellogg. See Ex. A at 12:1–9 (testifying that he did not have any health issues or any communication with Kellogg in August 2017, and that he has never had any mental impairment). Nor did Bunting attempt to file his lawsuit before August 29, 2017, see id. at 60:8–12, even though he received adequate notice of Title VII's limitations period through the EEOC's Right to Sue Letter, see, supra, at 11. The court also notes that this action is not the first time that Bunting has filed Title VII claims in federal court. In 2014, Bunting demonstrated his capacity to comply with Title VII's limitations period when he filed a timely Title VII lawsuit against Kellogg in connection with Kellogg's promotion practices. See Bunting v. Kellogg's Corporation, No. 3:14-cv-621(VAB), Complaint (Doc. No. 1) at 1 & Ruling on Motion for Summary Judgment (Doc. No. 53-1) at 6 (indicating that Bunting filed his federal lawsuit on May 5, 2014, 90 days after the EEOC issued its right to sue letter on February 4, 2014).

In light of this evidence in the record, no reasonable factfinder could conclude that equitable tolling applies to Bunting's action before this court. Accordingly, Kellogg's Motion for Summary Judgment as to Bunting's Title VII claims of sexual harassment and retaliation is granted on the grounds that these claims are time barred.

B.  Title VII Claim of Race Discrimination

Kellogg argues that it is entitled summary judgment as to Bunting's Title VII claim of race discrimination because Bunting failed to exhaust his administrative remedies with respect to that claim. See Def.'s Mem. at 7.

As a general rule, "a plaintiff seeking to bring a claim pursuant to . . . Title VII . . . must exhaust administrative remedies through the EEOC or CHRO." Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot., 882 F.3d 52, 57 (2d Cir. 2018). However, [c]laims not raised in an EEOC complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (internal quotation marks omitted). Importantly, this exception to Title VII's exhaustion requirement only applies to unexhausted claims that reasonably relate to claims that have been timely filed by the plaintiff. See Mathirampuzha v. Potter, 548 F.3d 70, 75 (2d Cir. 2008) ("Although the general rule is that a Title VII plaintiff may not pursue an unexhausted claim, we will consider all claims to the extent they are 'reasonably related' to those that the plaintiff did assert in a timely EEOC charge."). This exception does not apply to unexhausted claims that reasonably relate to claims that are, themselves, time-barred. See Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1403 (2d Cir. 1993) (holding that those allegations in the plaintiff's EEOC charge that were time-barred could not form the basis for a "reasonably related" claim). In other words, "[t]ime-barred claims cannot serve as predicates for allegations in the complaint said to be reasonably related to an EEOC charge." Wright v. New York City Off-Track Betting Corp., No. 05 CIV. 9790 (WHP), 2008 WL 762196, at *3 (S.D.N.Y. Mar. 24, 2008) (internal quotation marks omitted).

In this case, it is undisputed that, while Bunting included his Title VII race discrimination claim in the Complaint that he filed in this court, he did not allege this claim in the CHRO Charge. Def.'s L.R. 56(a)1 at ¶¶ 45, 46; Pl.'s L.R. 56(a)2 at 15, ¶ 45, 16, ¶ 46.[4] Bunting therefore did not exhaust his administrative remedies with respect to his race discrimination claim.

Furthermore, even assuming that this claim was "reasonably related" to the claims that Bunting included in his CHRO Charge, it would be dismissed because, as discussed above, the claims that Bunting asserts in his CHRO Charge are time barred. See, supra, at 6–14.

For these reasons, Kellogg is entitled to summary judgment as to Bunting's Title VII claim of race discrimination.

C. State Law Claim

In his opposition papers to Kellogg's Motion for Summary Judgment, Bunting appears to assert a state law tort claim against Kellogg. See Pl.'s Opp'n at 6–7. Specifically, Bunting writes that he is "alleging Unjust Termination to Employment" pursuant to section 1332 of title 28 of the United States Code, the principal statute governing diversity jurisdiction. Id. He further asserts that "[t]he CHRO did not rule on the Unjust [T]ermination complaint" because "[t]hat jurisdiction belong [sic] to the District Court." Id. at 21. Construed liberally, Bunting's pro se opposition briefs appear to assert some type of tort claim under Connecticut law, perhaps for wrongful termination. Shanks v. Walker, 116 F. Supp. 2d 311, 313–14 (D. Conn. 2000) (noting that

---

[4] If Bunting had alleged a race discrimination claim in the CHRO Charge, then that claim would be time barred for the same reasons that Bunting's Title VII claims of sexual harassment and retaliation are time barred. See, supra, at 6–14.

15

Connecticut's wrongful termination doctrine carves out a "narrow exception" to "the rule that an employee hired for an indefinite period is dischargeable at the will of his employer.") (internal quotation marks omitted).

However, the court will not consider such claims because they are being raise for the first time in Bunting's opposition papers. It is well established that "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint." Shah v. Helen Hayes Hosp., 252 Fed.Appx. 364, 366 (2d Cir.2007). Even a pro se plaintiff must set forth his "claim[s] . . . in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim[s]." Thomas v. Egan, 1 F. App'x 52, 54 (2d Cir. 2001) Bunting did not assert any state law claims in his Complaint, which, instead, only advises Kellogg of Bunting's Title VII claims. See Lyddy v. Bridgeport Bd. of Educ., No. 3:06CV1420 AHN, 2007 WL 2697452, at *3 n.3 (D. Conn. Sept. 11, 2007) ("Although the court must . . . liberally construe a complaint, this does not mean that it must construe a complaint to include a claim that is not pleaded.") (internal citations omitted). It is therefore "inappropriate [for Bunting] to raise [such] claims for the first time in submissions in opposition to a summary judgment motion." Thomas, 1 F. App'x at 54.

If Bunting wishes to pursue a state law tort claim, he may file a motion to amend his Complaint to add such a claim. Id. ("Ordinarily, a district court presented with such a situation could grant plaintiff leave to amend her complaint, incorporating these new claims."). Only at that time will the court consider whether it would be proper under Federal Rule of Civil Procedure 15 to permit Bunting to amend his Complaint at this stage of the litigation.

## V. CONCLUSION

For the foregoing reasons, Kellogg's Motion for Summary Judgment (Doc. No. 50) is **GRANTED**. If Bunting wishes to pursue the state law claim that he raised in his opposition briefs, he may do so by filing a motion to amend his Complaint on or before February 8, 2019. In this motion, Bunting must set forth sufficient factual allegations to afford Kellogg fair notice of the state law claim that he seeks to bring and the grounds on which this claim is based. Bunting must attach a proposed Amended Complaint that sets forth this and only this state law claim. See D. Conn. L. Civ. R. 12(a). Because all of Bunting's federal law claims have been dismissed, Bunting is reminded that this court may only consider his state law claim if it has diversity jurisdiction. If Bunting files a motion to amend his Complaint, the court will decide at that time whether permitting such an amendment would be proper at this stage of the litigation.

**SO ORDERED.**

Dated at New Haven, Connecticut this 16th day of January, 2019.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge